**UNITED STATES DISTRICT COURT**     **EASTERN DISTRICT OF TEXAS**

ESCOPETA OIL & GAS CORPORATION,  §
                                 §
              Plaintiff,         §
                                 §
*versus*                         §     CIVIL ACTION NO. 1:06-CV-386
                                 §
SONGA MANAGEMENT, INC., SONGA    §
DRILLING AS, SONGA DRILLING PTE, §
LTD., and SONGA OFFSHORE ASA,    §
                                 §
              Defendants.        §

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiff Escopeta Oil & Gas Corporation's ("Escopeta") Opposed Motion to Remand and for Costs and Attorney's Fees (#14). Escopeta seeks remand to state court of this action for breach of contract, fraudulent misrepresentation and inducement, civil conspiracy, and unjust enrichment against Defendants Songa Management, Inc. ("Songa Management"), Songa Drilling AS ("Songa AS"), Songa Drilling PTE, Ltd. ("Songa PTE"), and Songa Offshore ASA ("Songa Offshore") (collectively "Defendants"). Songa Offshore has not yet filed an answer or otherwise appeared in this case. Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that remand is warranted.

I.   Background

During early 2006, Escopeta sought to procure the services of a jack-up drilling rig to commence drilling on several oil and gas leases in the Cook Inlet, Alaska. During its search, Escopeta began negotiations with Alan Broussard ("Broussard"), Vice President of Songa Management. On February 15, 2006, Danny S. Davis ("Davis"), President of Escopeta, and

Broussard signed a letter agreement that provided for "[Songa AS] or an affiliate company" to furnish the SONGA TELLUS ("TELLUS"), a jack-up drilling rig, for transport by Escopeta to the Cook Inlet in Alaska to commence drilling operations.  The agreement further required Escopeta to contract for the Heavy Lift Vessel TAI AN KOU ("TAI AN KOU") to transport the TELLUS, after picking it up during a loading window ranging from June 1 through June 30, 2006.  The agreement contains a few additional terms, notably requiring that preliminary payments of $250,000.00 be made on April 1 and May 1, 2006.  Significantly, the agreement indicates that it is "subject to negotiation of a mutually agreed, definitive contract," without which, "the provisions of this letter agreement are void . . . ."  Escopeta argues that this document, which constitutes the basis of its lawsuit, is a binding, enforceable contract.  Conversely, Defendants maintain that it is merely an unenforceable "agreement to agree."

On March 2, 2006,[1] the parties entered into a form contract entitled "Offshore Daywork Drilling Contract—U.S." ("Drilling Contract").  In the sixty-four page Drilling Contract, the parties omitted any reference to a loading window for the TELLUS, whether in June or otherwise, and the two $250,000.00 preliminary payments.  The Drilling Contract, however, contains a merger clause, Section 1307, which states:

> **Entire Agreement.**  This Contract constitutes the full understanding of the parties and a complete and exclusive statement of the terms of their agreement, and shall exclusively control and govern all work performed hereunder.  All representations, offers, and undertakings of the parties made prior to the effective date hereof, whether oral or in writing, are merged herein, and no other contracts, agreements, or work orders, executed prior to the execution of this Contract, shall in any way modify, amend, alter, or change any of the terms or conditions set out herein.

---

[1] Although the contract itself is dated March 1, the parties' signatures are dated March 2, 2006.

Escopeta paid the two $250,000.00 payments to Songa PTE, as required by the February 15 agreement, directing correspondence regarding these payments to Broussard.

When doubts arose concerning Defendants' ability to deliver the TELLUS within the purported loading window, Bob Scott, President and Chief Executive Officer of Songa Management, instructed Escopeta's representatives to discuss the matter with Broussard or Asbjorn Vavik, Chief Operating Officer of Songa Management. Davis claims that, on several occasions, Broussard assured him that the TELLUS would be ready for transport to the Cook Inlet during the June loading window. On May 2, 2006, however, Broussard authored a letter to Davis, which purported to "correct some misperceptions," stating that "Songa has never agreed to a date for delivery . . . of the TELLUS." Rather, Broussard asserted that, in the past, "Songa [had] consistently given Escopeta its best estimate of the date by which [the TELLUS] would be ready for delivery." When the TAI AN KOU arrived at the Texas coastline on June 21, 2006, the TELLUS, which was still being refurbished, was unavailable for transport. Although Defendants attempted to arrange for the refurbishment to be continued while the TELLUS was being transported by the TAI AN KOU, such plans were ultimately discarded as impracticable.

On July 3, 2006, Escopeta filed its Original Petition in the 172d Judicial District Court of Jefferson County, Texas, asserting claims for breach of contract, fraudulent misrepresentation and inducement, civil conspiracy, and unjust enrichment. It is undisputed that Plaintiff Escopeta, a Texas corporation, is a citizen of the State of Texas. Defendant Songa Management, a Texas corporation, is likewise a citizen of the State of Texas. Defendants Songa AS and Songa Offshore are foreign corporations organized under the laws of Norway. Defendant Songa PTE is a foreign, private limited company organized under the laws of Singapore.

On July 12, 2006, Songa AS and Songa PTE removed the case to federal court on the basis of both diversity of citizenship and admiralty jurisdiction, alleging that complete diversity exists among the real parties in interest and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and that the contract in question is maritime in nature. Defendants assert that because Songa Management was fraudulently joined as a defendant to defeat diversity, it should be dismissed as a party to this action and its citizenship should be ignored for jurisdictional purposes. On August 11, 2006, Escopeta filed a motion to remand the case to state court, contending that admiralty jurisdiction does not support removal and that Songa Management was properly joined and, therefore, because complete diversity does not exist among the parties, federal jurisdiction is lacking.

II.    Analysis

    A.    Standard for Remand

"Federal courts are courts of limited jurisdiction." *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 741 (5th Cir. 1999); *Bobo v. Christus Health*, 359 F. Supp. 2d 552, 554 (E.D. Tex. 2005). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (citations omitted). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377); *see*

4

*also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005).

When considering a motion to remand, "[t]he removing part[ies] [bear] the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *accord DaimlerChrysler Corp. v. Cuno*, ___ U.S. ___, ___, 126 S. Ct. 1854, 1861 n.3 (2006); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *Boone*, 416 F.3d at 388; *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Howery*, 243 F.3d at 919; *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995).  "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Albonetti v. GAF Corp. Chem. Group*, 520 F. Supp. 825, 827 (S.D. Tex. 1981).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).  "The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank*, 128 F.3d at 922; *see* 28 U.S.C. § 1441(a).  Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941);

5

*Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002); *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002); *Manguno*, 276 F.3d at 723; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.), *cert. denied*, 530 U.S. 1229 (2000); *Frank*, 128 F.3d at 922.

    B.    <u>Subject Matter Jurisdiction</u>

    Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal or admiralty law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1331, 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, ___, 126 S. Ct. 606, 613 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, ___, 125 S. Ct. 2611, 2617 (2005); *McDonal*, 408 F.3d at 181; *Howery*, 243 F.3d at 914-15; *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000); *Moore v. Powers*, 279 F. Supp. 2d 821, 824 (E.D. Tex. 2003). In order to determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as of the date of removal. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998); *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 558 n.1 (5th Cir. 2004); *Manguno*, 276 F.3d at 723; *Howery*, 243 F.3d at 916; *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Texas Beef Group v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). In removed cases where there is no federal question involved, subject matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co.*, 126 S. Ct. at 613; *Exxon Mobil Corp.*, 125 S. Ct. at 2617; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir.), *cert. denied*, 534 U.S. 997 (2001); *Gebbia*, 233 F.3d

at 882.   Complete diversity requires that no plaintiff be a citizen of the same state as any

defendant.   *See Exxon Mobil Corp.*, 125 S. Ct. at 2617; *Caterpillar Inc.*, 519 U.S. at 68; *Heritage*

*Bank*, 250 F.3d at 323; *Howery*, 243 F.3d at 920.   Furthermore, removal is appropriate only if

none of the parties properly joined and served as defendants are citizens of the state in which the

action was brought.   *See* 28 U.S.C. § 1441(b); *Lincoln Prop. Co.*, 126 S. Ct. at 613; *Crockett v.*

*R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531-32 (5th Cir.), *cert. denied*, 126 S. Ct. 2945

(2006); *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988); *Dollar*

*v. General Motors Corp.*, 814 F. Supp. 538, 543 (E.D. Tex. 1993).

In addition to federal question and diversity cases, federal district courts possess original

jurisdiction over matters arising in admiralty or maritime law.   *See* U.S. CONST. art. III, § 2; 28

U.S.C. § 1333; *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004); *Temple Drilling Co. v.*

*Louisiana Ins. Guar. Ass'n*, 946 F.2d 390, 394 (5th Cir. 1991).   "In determining the boundaries

of admiralty jurisdiction, [courts] look to the purpose of the grant."   *Exxon Corp. v. Central Gulf*

*Lines, Inc.*, 500 U.S. 603, 608 (1991).   The "'fundamental interest giving rise to maritime

jurisdiction is the protection of maritime *commerce*.'"   *Norfolk S. Ry. Co.*, 543 U.S. at 25

(quoting *Exxon Corp.*, 500 U.S. at 608) (emphasis in original) (citations omitted).   The "'trend

in modern admiralty case law . . . is to focus the jurisdictional inquiry on whether the nature of

the transaction was maritime.'"   *Temple Drilling Co.*, 946 F.2d at 395 (quoting *Exxon Corp.*, 500

U.S. at 611).

For contract disputes, "'the boundaries of admiralty jurisdiction—as opposed to torts or

crimes—[are] conceptual rather than spatial . . . .'"   *Norfolk S. Ry. Co.*, 543 U.S. at 23 (quoting

*Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)).   "'[T]he true criterion is the nature and

subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions.'" *Exxon Corp.*, 500 U.S. at 610 (quoting *Insurance Co. v. Dunham*, 78 U.S. 1, 16 (1871)).  District courts "should look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." *Id.*

      C.    Removal of Admiralty Claims

      In their Notice of Removal, Songa AS and Songa PTE assert that the court has admiralty jurisdiction over the instant controversy.  While 28 U.S.C. § 1333 grants original jurisdiction to federal courts concerning "[a]ny civil case of admiralty or maritime jurisdiction," it does not explicitly authorize removal.  28 U.S.C. § 1333.  "General maritime claims saved to suitors are, of themselves, not removable." *Morris v. T E Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003) (citing *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 377-79 (1959)).  Removal of maritime claims is appropriate only where "federal jurisdiction exists under a separate statute" that provides a basis for removal. *Id.*  Here, Songa AS's and Songa PTE's assertion that this court has jurisdiction over the pending lawsuit merely because it "involves a maritime contract" is misplaced.  Hence, the maritime character of the contract in dispute cannot serve as a basis for removal, and remand is warranted unless independent grounds for jurisdiction exist.

      In their responses to Escopeta's motion to remand, Defendants do not address the propriety of removal on the basis of admiralty jurisdiction and appear to have abandoned their position in this regard.  Indeed, because Defendants did not brief this claim in their responsive brief, any contention that admiralty jurisdiction exists has been waived and is no longer at issue. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525-26 (5th Cir. 2005); *Scales v. Slater*, 181 F.3d 703,

8

709 n.5 (5th Cir. 1999); *Garcia v. BRK Brands, Inc.*, 266 F. Supp. 2d 566, 578 n.17 (S.D. Tex. 2003); *Edwards v. Texas-New Mexico Power Co.*, 259 F. Supp. 2d 544, 547 (N.D. Tex. 2003); *see also Stearman v. Commissioner of Internal Revenue*, 436 F.3d 533, 537 (5th Cir.), *cert. denied*, 126 S. Ct. 2900 (2006); *Bursztajn v. United States*, 367 F.3d 485, 491 (5th Cir. 2004); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).  Therefore, Defendants cannot rely on admiralty jurisdiction to preclude remand of this case.

D.    Fraudulent Joinder

In the case at bar, although there is no dispute that Plaintiff Escopeta and Defendants Songa AS, Songa PTE, and Songa Offshore are diverse and that more than $75,000.00 is at issue, complete diversity is lacking because Defendant Songa Management is a citizen of Texas. Therefore, to establish the existence of diversity jurisdiction, Defendants must show that Songa Management was improperly or fraudulently joined as a defendant to this action.  *See Guillory*, 434 F.3d at 307-08; *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 224-25 (5th Cir. 2005), *cert. denied*, 127 S. Ct. 48 (2006); *Heritage Bank*, 250 F.3d at 323; *Hart*, 199 F.3d at 246; *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868 (1993).  "The removing part[ies] [bear] the heavy burden of proving that non-diverse defendants have been fraudulently joined to defeat diversity, either by showing that (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts, or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court."  *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995); *accord Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006); *Holder v. Abbott*

9

*Labs., Inc.*, 444 F.3d 383, 387 (5th Cir. 2006); *Guillory*, 434 F.3d at 308-09; *McDonal*, 408 F.3d

at 183; *Melder v. Allstate Corp.*, 404 F.3d 328, 330 (5th Cir. 2005); *Smallwood v. Illinois Cent.*

*R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005); *Travis v. Irby*,

326 F.3d 644, 647 (5th Cir. 2003); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

313 F.3d 305, 312 (5th Cir. 2002).

A determination of fraudulent joinder must be based on an analysis of the causes of action

alleged in the complaint at the time of removal. *See Cavallini*, 44 F.3d at 264; *Hook v. Morrison*

*Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994).  Where the defendant maintains that federal

jurisdiction is proper, the court must evaluate all the factual allegations in the plaintiff's state court

pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive

fact in favor of the plaintiff, and then examine relevant state law and resolve all uncertainties in

favor of the nonremoving party.  *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir.

2003), *cert. denied*, 126 S. Ct. 335 (2005); *Travis*, 326 F.3d at 649; *Great Plains Trust Co.*, 313

F.3d at 312; *Hart*, 199 F.3d at 246; *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.

1999); *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072

(1998).  Furthermore, the "'court must normally assume all the facts as set forth by the plaintiff

to be true.'"  *Burden*, 60 F.3d at 217 (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205

(5th Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984)).  While a court when considering allegations

of fraudulent joinder should refrain from pre-trying the case or conducting an evidentiary hearing,

it may utilize a summary judgment-type procedure "that allows it to pierce the pleadings and

examine affidavits and deposition testimony for evidence of fraud or the possibility that the

plaintiff can state a claim under state law against a nondiverse defendant."  *Great Plains Trust*

*Co.*, 313 F.3d at 311; *accord Guillory*, 434 F.3d at 309-10; *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004); *Travis*, 326 F.3d at 648-49; *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000), *cert. denied*, 532 U.S. 972 (2001); *Hart*, 199 F.3d at 246-47; *Griggs*, 181 F.3d at 700.  "Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs*, 181 F.3d at 700 (citing *Cavallini*, 44 F.3d at 263).

Here, where there is no allegation of outright fraud in the recitation of jurisdictional facts, to prove the existence of fraudulent joinder, the removing parties must demonstrate that there is no possibility that the plaintiff could establish a cause of action against the non-diverse defendant in state court.  *See Larroquette*, 466 F.3d at 374; *Holder*, 444 F.3d at 387; *Guillory*, 434 F.3d at 308; *Melder*, 404 F.3d at 330; *Smallwood*, 385 F.3d at 573; *Travis*, 326 F.3d at 648; *Great Plains Trust Co.*, 313 F.3d at 312; *Hart*, 199 F.3d at 246; *Griggs*, 181 F.3d at 699; *Rodriguez*, 120 F.3d at 591.  "In evaluating a claim of fraudulent joinder, [the court does] not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff may do so." *Id.*; *see Guillory*, 434 F.3d at 308-09; *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); *Burden*, 60 F.3d at 216.  "'If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham . . . and is not fraudulent in fact or in law.'" *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)); *accord Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 43 (5th Cir. 1992).  "This possibility, however, must be reasonable, not merely theoretical." *Great Plains Trust Co.*, 313 F.3d at 312 (citing *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n.4 (5th

11

Cir. 2000)); *accord Boone*, 416 F.3d at 388; *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004); *Travis*, 326 F.3d at 648.  "'If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then there is no fraudulent joinder,'" and the case must be remanded for lack of diversity. *Great Plains Trust Co.*, 313 F.3d at 312 (quoting *Badon*, 236 F.3d at 286 (quoting *Jernigan*, 989 F.2d at 816)); *see Gray*, 390 F.3d at 402; *Smallwood*, 385 F.3d at 589-90; *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751; *Burden*, 60 F.3d at 216.

In assessing whether a plaintiff could possibly establish a claim against a non-diverse defendant, the court must apply the law of the state in which the action was brought—in this case, Texas. *See Travis*, 326 F.3d at 647; *Hart*, 199 F.3d at 247.  "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiff['s] allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701; *see Burden*, 60 F.3d at 218-21.  In this instance, Escopeta alleges claims against Songa Management for breach of contract, fraudulent misrepresentation and inducement, and civil conspiracy.

        1.    <u>Fraudulent Inducement</u>

In Texas, fraud may consist of an affirmative misrepresentation or, in certain circumstances, the concealment of a material fact.  To recover for fraudulent inducement in the context of a positive representation, the plaintiff must establish that:

(1)     the defendant made a material representation concerning an existing fact;

(2)     the representation was false when it was made;

(3)     the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)     the speaker made the misrepresentation with the intent that it should be

acted upon;

(5)     the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)     the plaintiff suffered injury as a result.

*See Malacara v. Garber*, 353 F.3d 393, 404-05 (5th Cir. 2003); *Great Plains Trust Co.*, 313 F.3d

at 322; *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir.), *cert. denied*, 522 U.S.

966 (1997); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001); *Johnson & Higgins*

*of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998); *Formosa Plastics Corp.*

*USA v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).   "Fraud is never

presumed, and it is plaintiff's burden to allege and prove actionable fraud."  *William B. Roberts,*

*Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex. Civ. App.—Corpus Christi 1979, no writ).

A third-party or agent may be liable for fraudulent inducement even where it is not a party to the

underlying contract.  *See Kingston v. Helm*, 82 S.W.3d 755, 764-66 (Tex. App.—Corpus Christi

2002, pet. denied); *Davis v. Freeman*, 347 S.W.2d 650, 654-55 (Tex. Civ. App.—Dallas 1961,

no writ) (citing *Yarber v. Iglehart*, 264 S.W.2d 474, 476 (Tex. Civ. App.—Dallas 1953, no writ));

*see also Formosa Plastics Corp. USA*, 960 S.W.2d at 46.

For remand purposes, it seems relatively clear that Escopeta has pleaded adequately and

adduced some evidence of at least five of the six elements of a claim for fraudulent inducement

against Songa Management.  Defendants contend, however, that the element of justifiable reliance

is lacking.  "[A] plaintiff's reliance on 'the defendant's fraudulent conduct must be justifiable as

well as actual.'"  *Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1050 (5th Cir.), *cert. denied*,

506 U.S. 822 (1992) (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 n.4 (5th

Cir. 1990)); *see Lewis v. Bank of Am. NA*, 343 F.3d 540, 546-47 (5th Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004); *Brittan Commc'ns Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 906 (5th Cir. 2002), *cert. denied*, 538 U.S. 1034 (2003); *Quest Exploration & Dev. Co. v. Transco Energy Co.*, 24 F.3d 738, 742 (5th Cir. 1994); *Roberts v. United N.M. Bank*, 14 F.3d 1076, 1078 (5th Cir. 1994); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex. 2002) (citations omitted); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983).  Justifiable reliance consists of two elements:  (1) the plaintiff must in fact rely on the information; and (2) the reliance must be reasonable.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501-02 (5th Cir. 2000); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 615 (5th Cir.), *cert. denied*, 519 U.S. 869 (1996); *Geosearch, Inc. v. Howell Petroleum Corp.*, 819 F.2d 521, 526 (5th Cir. 1987).

When considering these elements, the reasonableness of the plaintiff's reliance is assessed in view of the "'individual['s] characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud.'"  *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996), *cert. denied*, 522 U.S. 966 (1997) (quoting *Haralson*, 919 F.2d at 1026); *accord Brittan Commc'ns Int'l Corp.*, 313 F.3d at 906 (citations omitted); *Quest Exploration & Dev. Co.*, 24 F.3d at 742; *Beijing Metals & Minerals Imp./Exp. Corp.*, 993 F.2d at 1186; *Smith v. Harrison County*, 824 S.W.2d 788, 793 (Tex. App.—Texarkana 1992, no writ). "[T]he justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience."  *Scottish Heritable Trust, PLC*, 81 F.3d at 615 (citing *Haralson*, 919 F.2d at 1026). If a party is sophisticated and experienced, "that may be evidence that he did not rely on the seller's representations but on his own expertise.  The degree of sophistication is evidence for the

trier of fact to consider in deciding the issue of reasonable or justifiable reliance." *Lutheran Bhd. v. Kidder Peabody & Co.*, 829 S.W.2d 300, 308 (Tex. App.—Texarkana), *vacated on other grounds*, 840 S.W.2d 384 (Tex. 1992); *accord 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). "The reasonableness of a person's reliance on a particular representation is to be determined by the nature of the representation and the circumstances surrounding the making of the representation." *Smith*, 824 S.W.2d at 793; *see Bykowicz*, 950 F.2d at 1050-51; *1001 McKinney Ltd.*, 192 S.W.3d at 30. There can be no justifiable reliance where the representations were such that "'"any person of normal intelligence, experience, and education would recognize [them] at once as preposterous . . . or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery.'"" *Beijing Metals & Minerals Imp./Exp. Corp. v. American Bus. Ctr., Inc.*, 993 F.2d 1178, 1186 (5th Cir. 1993) (quoting *Haralson*, 919 F.2d at 1026 (quoting *General Motors Corp., Pontiac Motor Div. v. Courtesy Pontiac, Inc.*, 538 S.W.2d 3, 6 (Tex. Civ. App.—Tyler 1976, no writ))). "Put another way, there must be a reasonable relation between the contents of the defendant's misrepresentation and the action the plaintiff took in reliance." *Geosearch, Inc.*, 819 F.2d at 526.

    2.   <u>Effect of Merger Clause</u>

Defendants maintain that the merger clause contained in the Drilling Contract, signed on March 2, 2006, negates the element of justifiable reliance. Escopeta concedes that the Drilling Contract contains a merger clause. Texas courts, and federal courts sitting in diversity jurisdiction, have on numerous occasions recognized the validity and enforceability of such exculpatory clauses when faced with allegations of fraudulent misrepresentation and/or fraudulent

concealment.  *See, e.g.*, *Armstrong v. American Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003); *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 405 (5th Cir. 2000); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995); *Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 258-59 (Tex. App.—Corpus Christi 2006, pet. filed); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 869-70 (Tex. App.—Austin 2006, pet. dism'd by agr.); *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The Texas Supreme Court has found, however, that, in some instances, "as a matter of policy . . . a merger clause can be avoided based on fraud in the inducement and that the parol evidence rule does not bar proof of such fraud."  *Schlumberger Tech. Corp.*, 959 S.W.2d at 179 (citing *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (1957)).  Moreover, some Texas appellate authority supports the proposition that merger clauses do not apply to fraudulent inducement claims where the contractual provision containing the clause does not specifically contemplate tort liability.  *See Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 395 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd by agr.) (citing *Dallas Farm Mach. Co.*, 307 S.W.2d at 239); *but see Springs Window Fashions Div., Inc.*, 184 S.W.3d at 869 (interpreting *Schlumberger* to imply that merger clauses are generally applicable in the tort context).

"Juxtaposed to this authority, [is] a competing concern—the ability of parties to fully and finally resolve disputes between them."  *Schlumberger Tech. Corp.*, 959 S.W.2d at 179.  "Parties should be able to bargain for and execute a release barring all further dispute."  *Id.*  "This

16

principle necessarily contemplates that parties may disclaim reliance on representations." *Id.* "And such a disclaimer, where the parties' intent is clear and specific, should be effective to negate a fraudulent inducement claim." *Id.* "As an example, a disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim." *Id.* (enforcing merger clause to bar fraudulent inducement claim where the parties expressly and unequivocally disclaimed reliance on prior representations) (citing *Prudential Ins. Co.*, 896 S.W.2d at 161-62 (holding that agreement to buy property "as is," in which buyer included "voluntary, freely negotiated affirmation that he was depending on his own assessment of the building," precluded claim for damages when building was found to contain asbestos); *Estes v. Hartford Accident & Indem. Co.*, 46 S.W.2d 413, 417-18 (Tex. Civ. App.—El Paso 1932, writ ref'd) (affirming directed verdict upholding release where evidence conclusively negated reliance on alleged misrepresentations)). "The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Id.* at 179-80 (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Prudential Ins. Co.*, 896 S.W.2d at 162).

E.    Viability of Escopeta's Claim of Fraudulent Inducement

Here, considering the environment and context in which the purported representations were made, the nature of the representations, the parties' sophistication and previous experience, as well as the Drilling Contract's merger clause, the court cannot conclude as a matter of law that Escopeta has no possibility of recovery against Songa Management on its fraudulent inducement claim. *See id.* As Escopeta points out, the Drilling Contract contains no mention of a proposed

loading window that would negate its reliance upon the alleged representations of Broussard and Songa Management. The parties presumably contemplated some time frame in which the TELLUS would be loaded for transport to the Cook Inlet. While the merger clause renders the Drilling Contract controlling as to the terms contained therein, the Drilling Contract's silence as to the time for performance militates against a conclusive determination that it absolves Songa Management of liability for any purported misrepresentations concerning this significant issue made prior to its execution. The omission is perhaps, in part, explained by the fact that the Drilling Contract is a form contract, drafted entirely by the International Association of Drilling Contractors, aside from a few minor additions and modifications made by the parties. In contrast, the release that was enforced in *Schlumberger* was drafted by the parties and narrowly tailored to address their specific circumstances and unique concerns. *See id.* at 180.

Moreover, the record substantiates the proposition that the timing of the TELLUS's departure date was considered crucial. Davis's affidavit,[2] while undoubtedly self-serving, alleges that he relied upon Broussard's and Songa Management's affirmative representations concerning the purported June loading window. Indeed, Defendants' own internal documentation— specifically, the April 24, 2006, Management Services Agreement between Songa AS, Songa PTE, and Songa Management, which indicates that Defendants expected the TELLUS to be ready for transport on June 12, 2006—supports, at least by inference, the existence of an agreement for a

---

[2] Contrary to Defendants' assertions, Davis's affidavit does not expound new theories of recovery. Rather, it provides facts underlying the preexisting claims and theories that were advanced in Escopeta's Original Petition, as its pleadings track the necessary elements of a cause of action for fraudulent inducement. In Texas state court, absent a special exception, a plaintiff need not plead fraud with particularity to avoid dismissal or survive summary judgment. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 336 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 600-01 (Tex. 1993)).

June delivery date. While such evidence may prove useful to Defendants at trial in showing that Broussard's supposed statements were not deliberately false when made, at this stage, it suggests that Escopeta's claims regarding the purported loading window are accurate.

Unlike the merger clause that the Texas Supreme Court enforced in *Schlumberger*, the merger clause in the Drilling Contract is neither comprehensive nor unambiguous. In *Schlumberger*, the contract specifically provided that "none of [the parties] is relying upon any statement or representation of any agent of the parties being released hereby. Each of [the parties] is relying on his or her own judgment . . . ." *Id.* at 180. Here, the merger clause, set out above, is far less encompassing. While the merger clause specifies that the Drilling Contract constitutes the "full understanding of the parties" as to "their agreement," it is unclear whether the delivery window is within the scope of the Drilling Contract. The parties may have intentionally omitted any mention of a loading window because none was contemplated; conversely, however, it is also plausible that the parties purposely entered into a separate agreement to cover the timing of the delivery of the TELLUS.

"The existence of an integration provision does not always prohibit the introduction of [parol evidence] . . . where the contract, on its face, shows that it is not fully integrated." *ADT Sec. Servs., Inc. v. Hawa*, No. 09-04-536 CV, 2005 WL 2878161, at *9 (Tex. App.—Beaumont Nov. 3, 2005, no pet.) (mem. op., not designated for publication) (citing *Bob Robertson, Inc. v. Webster*, 679 S.W.2d 683, 688-89 (Tex. App.—Houston [1st Dist.] 1984, no writ)); *accord Springs Window Fashion Div., Inc.*, 184 S.W.3d at 870 (citations omitted). Moreover, "a subsequent integration will not supersede or invalidate a written agreement relating to the same subject matter if the agreement is such that might naturally be made as a separate agreement."

*Fish v. Tandy Corp.*, 948 S.W.2d 886, 899 (Tex. App.—Fort Worth 1997, writ denied) (enforcing a prior letter agreement despite the existence of a merger clause) (citing *Smith v. Smith*, 794 S.W.2d 823, 828 (Tex. App.—Dallas 1990, writ denied); *Morgan v. Stover*, 511 S.W.2d 362, 364 (Tex. Civ. App.—Eastland 1974, writ ref'd n.r.e.)); *accord Springs Window Fashion Div., Inc.*, 184 S.W.3d at 870 (citations omitted) (permitting parol evidence in fraudulent inducement context where the contract containing the merger clause was silent concerning matters contained in the prior agreement). Thus, parol evidence of representations that are collateral in nature is not barred by a merger clause under Texas law. *See id.*

In this situation, Escopeta reasonably might have first sought to establish the time for delivery before ironing out myriad, less important details in a separate, more lengthy contract, especially given its assertions concerning the critical importance of the June delivery requirement. *See id.* According to Songa, it was essential for the TELLUS to depart for Alaska in June to permit the drilling of one or two wells before seasonal, encroaching winter ice rendered further drilling infeasible until spring. Because a delivery date was not specified in the Drilling Contract, the June loading window contained in the February 15 agreement, as well as any other statements made by Broussard, arguably do not "modify, amend, alter, or change" any of the terms of the Drilling Contract. Given the nature of the transaction and the readily apparent importance of the loading window, it would be surprising if the parties did not have some type of agreement concerning the time for performance of Defendants' obligations. Hence, the absence of a specified date for delivery in the Drilling Contract undermines Defendants' assertion that it is fully integrated. *See ADT Sec. Servs., Inc.*, 2005 WL 2878161, at *9 (citing *Bob Robertson, Inc.*, 679 S.W.2d at 688-89). The text of the February 15 agreement supports this interpretation by

providing that its terms are void in the absence of a definitive contract.  Presumably, then, the terms were intended to remain operative should the parties agree to a more comprehensive contract—which they did, in the form of the Drilling Contract.  It is also noteworthy that Songa PTE accepted the two $250,000.00 payments from Escopeta, which, according to a confirmatory letter from Davis to Broussard, dated April 28, 2006, were made pursuant to both the February 15 agreement and the Drilling Contract.

Some evidence, however, militates in favor of enforcing the merger clause to defeat Escopeta's fraudulent inducement claim.  Davis is a sophisticated individual with extensive business experience.  Moreover, Escopeta had the benefit of independent counsel, Patrick Strong ("Strong"), to review the Drilling Contract.  Indeed, Strong recommended several other changes and alterations; he could have suggested to Davis that a loading window be included.  Yet, the presence of independent counsel to assist a party does not necessarily preclude a claim of fraudulent inducement.  *See Schlumberger Tech. Corp.*, 959 S.W.2d at 179.  Moreover, Strong may have simply assumed that the delivery date was previously contracted for in the February 15 agreement.  The lack of formality surrounding the purported February 15 contract is troubling.  Yet, regardless of whether it constitutes a legally enforceable contract, the letter agreement is consistent with Escopeta's claim of misrepresentation and fraudulent inducement.  The question of whether Escopeta's reliance was reasonable is properly left to a jury.  *See 1001 McKinney Ltd.*, 192 S.W.3d at 30 (citing *Coston v. Bank of Malvern*, 991 F.2d 257, 260 (5th Cir. 1993); *Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 868 (Tex. App.—Houston [14th Dist.] 1984, no writ)).

In sum, Texas case law does not compel the conclusion that the merger clause in the Drilling Contract bars the introduction of evidence concerning Broussard's purportedly fraudulent representations on behalf of Songa Management.  First, the merger clause in question may not even function in the tort context under Texas law.  *See Carousel's Creamery, L.L.C.*, 134 S.W.3d at 395.  Second, even assuming that the merger clause is generally effective against tort claims, the facts and circumstances of this case may not warrant its enforcement under *Schlumberger*.  *See* 959 S.W.2d at 179.  Finally, Broussard's purported representations concerning the loading window are arguably outside the scope of the Drilling Contract, thus rendering the parol evidence rule inapplicable.  *See Springs Window Fashion Div., Inc.*, 184 S.W.3d at 870.  Hence, Defendants' argument that the merger clause conclusively defeats Escopeta's fraudulent inducement claim by negating the element of justifiable reliance fails.

Consequently, based on the evidence before the court, Defendants have not definitively proven that no reasonable finder of fact could conclude that Escopeta, in entering into the Drilling Contract, justifiably relied upon representations made by Songa Management concerning the June loading window.  The February 15 agreement suggests that the parties expressly contemplated a June delivery.  Moreover, Davis's statements support the proposition that Broussard guaranteed a time for performance of Defendants' obligation to furnish the TELLUS from the inception of the parties' dealings.  While evidence concerning Songa Management's intent to deceive may be sparse at this point, information supporting this element may be uncovered during the discovery process, including the deposition of Broussard.  Moreover, intent to defraud may be inferred by the finder of fact based on circumstantial evidence, such as the promisor's ultimate failure to perform.  *See id.* at 880 (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.

1986)).  In any event, at this juncture in the litigation, Escopeta has adduced sufficient evidence regarding each element of a *prima facie* case of fraudulent inducement to warrant remand to state court.

It has been firmly established by the Fifth Circuit that fraudulent joinder cannot be found if "there is any possibility that the plaintiff has stated a cause of action against any non-diverse defendant." *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751; *see Melder*, 404 F.3d at 330; *Smallwood*, 385 F.3d at 573; *Hart*, 199 F.3d at 246; *Burden*, 60 F.3d at 216; *B., Inc.*, 663 F.2d at 550 & n.11.  In this instance, while it has not been conclusively shown that Texas law would impose liability on Songa Management, the court is unable to conclude that Escopeta cannot possibly recover against Songa Management for fraudulent inducement.  Hence, "[t]aking the plaintiff's allegations in this case to be true, [the court] cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against defendant [Songa Management]." *B., Inc.*, 663 F.2d at 554.  Even assuming *arguendo* that the balance of Escopeta's claims against Songa Management fail, remand is appropriate because Defendants have not met their burden of proof regarding Escopeta's fraudulent inducement claim.

Thus, under these circumstances, Defendants have not shown that there is "absolutely no possibility that [Escopeta] will be able to establish a cause of action against the in-state defendant." *Cavallini,* 44 F.3d at 259; *see Great Plains Trust Co.*, 313 F.3d at 312; *Hart*, 199 F.3d at 246; *Griggs*, 181 F.3d at 699; *Rodriguez*, 120 F.3d at 591; *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751; *Burden*, 60 F.3d at 216.  As a consequence, Songa AS and Songa PTE have failed to satisfy their burden of proving fraudulent joinder.  *See Travis*, 326 F.3d at 649-50; *Hart*, 199 F.3d at 246; *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751; *Burden*, 60 F.3d at 216;

*Green*, 707 F.2d at 205; *B., Inc.*, 663 F.2d at 550.   Because the removing parties have not

adduced sufficient evidence to establish that Songa Management was fraudulently joined, the

shared citizenship of Escopeta and Songa Management defeats diversity and prevents the court

from exercising jurisdiction over this lawsuit.   Accordingly, this action should be remanded to the

state court in which it was originally filed.

       F.    <u>Costs and Attorneys' Fees</u>

          1.    <u>Costs</u>

Rule 54(d) provides that costs "shall be allowed as of course to the prevailing party unless

the court otherwise directs." FED. R. CIV. P. 54(d); *see Delta Air Lines, Inc. v. August*, 450 U.S.

346, 351 (1981); *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir.), *cert. denied*, 127 S. Ct. 299

(2006); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 430 (5th Cir. 2000); *Resolution Trust

Corp. v. Gaudet*, 192 F.3d 485, 487 (5th Cir. 1999); *Tolson v. Avondale Indus., Inc.*, 141 F.3d

604, 611 (5th Cir. 1998); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993), *cert.

denied*, 510 U.S. 1195 (1994).   There is "a strong presumption that the court will award costs to

the prevailing party." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir.

1992); *see Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006); *Sheets v. Yamaha

Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990).   If the district court declines to award

costs to the prevailing party, the reasons must be stated. *See Salley*, 966 F.2d at 1017; *Hall v.

State Farm Fire & Cas. Co.*, 937 F.2d 210, 216-17 (5th Cir. 1991).

    "[T]he losing part[ies'] good faith is alone insufficient to justify the denial of costs to the

prevailing party." *Pacheco*, 448 F.3d at 795.   Courts have assumed that costs should be denied

"to the prevailing party 'only when there would be an element of injustice in a cost award.'" *Id.*

at 794 (quoting *Delta Air Lines, Inc.*, 450 U.S. at 355 n.14).   Nevertheless, a purported inability

to pay or a potential chilling effect on seeking redress in court will not suffice to avoid an award

of costs.   *See Tolson*, 141 F.3d at 611; *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118

F.3d 245, 256-58 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998).   In this instance, the facts

of the case do not warrant circumventing the strong presumption in favor of awarding costs to the

prevailing party.   *See Pacheco*, 448 F.3d at 793-94.   Thus, Escopeta is entitled to recover its costs

related to removal.

2.     Attorneys' Fees

Escopeta  contends that it is entitled to an award of attorneys' fees pursuant to 28 U.S.C.

§ 1447(c).   Federal law provides that "[a]n order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of removal."   28

U.S.C. § 1447(c).   "'The word "may" clearly connotes discretion.   The automatic awarding of

attorney's fees to the prevailing party would pretermit the exercise of that discretion.'"   *Martin*

*v. Franklin Capital Corp.*, 546 U.S. 132, ___, 126 S. Ct. 704, 709 (2005) (quoting *Fogerty v.*

*Fantasy, Inc.*, 510 U.S. 517, 533 (1994)).   There is no presumption in favor of an award of fees

upon remand of a case improvidently removed.   *See id.*   In exercising its discretion, a district

court should generally "award attorney's fees under § 1447(c) only where the removing part[ies]

lacked an objectively reasonable basis for removal."   *Id.* at 711 (citing *Hornbuckle*, 385 F.3d at

541; *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).

Songa AS's and Songa PTE's removal of this case was not objectively unreasonable.   Much

of the relevant case law supports the proposition that the merger clause in question defeats

Escopeta's fraudulent inducement claim, and its other claims against Songa Management appear

to be without merit.  While Defendants have not met the heavy burden necessary to sustain federal subject matter jurisdiction, the court concludes that Songa AS and Songa PTE possessed "an objectively reasonable basis" for removal.  *Martin*, 126 S. Ct. at 711.  Thus, Escopeta's request for attorneys' fees is denied.

III.     Conclusion

An evaluation of the relevant facts and controlling law reveals that Songa Management was not fraudulently joined as a defendant in this action.  Consequently, the court lacks subject matter jurisdiction over this case, as Defendants cannot establish the existence of admiralty jurisdiction, a federal question, or complete diversity of citizenship between the parties.  Therefore, this case was improvidently removed, and remand is warranted.  While Escopeta is entitled to the recovery of costs as a prevailing party, an award of attorneys' fees is not appropriate in this case.  Accordingly, this action shall be remanded to the 172d Judicial District Court of Jefferson County, Texas.

SIGNED at Beaumont, Texas, this 16th day of January, 2007.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE